UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAY BERGSTROM, et al.,

                Plaintiffs,

    v.

PROGRESSIVE CASUALTY INSURANCE CO.,

                Defendant.

Case No. C20-1810-DGE

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on Progressive Casualty Insurance Company's ("Progressive" or "Defendant") and Jay Bergstrom's ("Plaintiff") motions for partial summary judgment. (Def.'s Mot. (dkt. # 18); Pl.'s Mot. (dkt. # 20).) Plaintiff and Defendant filed responses in opposition to the motions for partial summary judgment. (Pl.'s Resp. (dkt. # 24); Def.'s Resp. (dkt. # 23).) Plaintiff and Defendant submitted replies to the motions for partial summary judgment. (Pl.'s Reply (dkt. # 27); Def.'s Reply (dkt. # 26).) Plaintiff also submitted a

REPORT AND RECOMMENDATION - 1

1  motion to strike.[1] (Pl.'s Resp. at 10.) Defendant filed opposition to the motion to strike.[2] (Def.'s

2  Reply at 2.) Having considered the parties' submissions, the governing law, and the balance of

3  the record, the Court RECOMMENDS Defendant's motion for partial summary judgment and

4  Plaintiff's motion for partial summary judgment be DENIED. Plaintiff's motion to strike is

5  GRANTED for the reasons discussed below.

## II. BACKGROUND

Plaintiff purchased two insurance policies from Defendant. (Am. Compl. (dkt. # 12) at ¶ 5.1.) The first policy was for a motor home belonging to Plaintiff. (*Id.*) The second policy was an auto policy for a Jeep belonging to Plaintiff. (*Id.*; Pl.'s Mot. at 3.) In purchasing the auto policy, Plaintiff executed a "Named Driver Exclusion Election" that excluded Plaintiff's wife, Kathleen Bergstrom, from the policy's coverage. (Robson Decl. (dkt. # 19), Ex. A; Bergstrom Decl. (dkt. # 21) at ¶ 5.) The exclusion stated that "[n]o coverage is provided for any claim arising from an accident or loss involving a motorized vehicle being operated by an excluded driver." (Robson Decl. Ex. A.)

On or about May 6, 2019, while driving the motor home, which was towing the Jeep, Plaintiff alleges he had trouble with navigation and ended up at the main entrance of the Bangor Naval Base. (Am. Compl. at ¶¶ 5.3-5.4.) Plaintiff was instructed by a guard to back up the motor home to an area large enough to turn around but encountered difficulty in reversing in the narrow space. (*Id.* at ¶¶ 5.5-5.6.) Plaintiff instructed Ms. Bergstrom to sit in the Jeep "to try [to] keep the steering on straight." (*Id.* at ¶ 5.7.) Plaintiff asserts that, because the Jeep was in neutral, without

---

[1] Plaintiff's motion to strike is included in its response to Defendant's motion for partial summary judgment per LCR 7(g). (*See* Pl.'s Resp. at 10.)

[2] Defendant's opposition to Plaintiff's motion to strike is included in Defendant's reply in support of its motion for partial summary judgment. (*See* Def.'s Reply. at 2.)

the engine running, Ms. Bergstrom was unable to keep the wheels straight. (Pl.'s Mot. at 4; Am. Compl. at ¶ 5.8.) Plaintiff alleges that he then told Ms. Bergstrom to "simply sit in the Jeep with her hands in her lap while he tried to fix the situation himself." (Pl.'s Mot. at 4.) Plaintiff again attempted to reverse, causing the vehicles to jack-knife, resulting to damage to the Jeep. (*Id.*; Am. Compl. at ¶ 5.9.)

On or around May 7, 2020, Defendant opened a claim for Plaintiff's requested coverage concerning the damage. (Am. Compl. at ¶¶ 5.10-5.11; Def.'s Mot. at 3.) Defendant recorded multiple statements from Plaintiff concerning the collision. (*See* Robson Decl., Exs. C-D.) On May 17, 2019, Defendant issued a letter denying coverage. (Robson Decl., Ex. E.) The letter stated that "[Defendant's] investigation has determined that Kathleen Bergstrom was operating the insured vehicle when this accident occurred" and cited the Named Driver Exclusion Election. (*Id.*)

On April 27, 2020, Plaintiff filed a complaint for damages in King County Superior Court against Defendant. (Dkt. # 1, Ex. A.) On December 15, 2020, Defendant removed the case to this Court. (Dkt. # 1.) On January 8, 2021, Plaintiff filed an amended complaint with this Court. (Am. Compl.)

### III. DISCUSSION

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.

REPORT AND RECOMMENDATION - 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In addition, it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Plaintiff first argues that Defendant breached the insurance contract in denying coverage for the damage to the Jeep. (Pl.'s Mot. at 10.) Plaintiff further argues that Defendant's breach and failure to investigate constitute acting in bad faith, and that these actions violated the Consumer

Protection Act. (*Id.* at 13, 17.) Defendant argues that it does not owe Plaintiff coverage because Ms. Bergstrom, who was an excluded driver, was operating the Jeep. (Def.'s Mot. at 6.) Defendant further argues that Plaintiff's assertions within his motion for partial summary judgment are contradicted by the record. (Def.'s Resp. at 4.)

### 1.   Breach of Insurance Contract

In Washington, an insurance policy is construed as a contract and given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash.2d 171, 181 (2017), *as modified* (Aug. 16, 2017) (quoting *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994) (quoted citations omitted)). Therefore, the interpretation of an insurance policy is a question of law. *See State Farm General Ins. Co. v. Emerson*, 102 Wash.2d 477, 480 (1984).

When resolving issues related to insurance contract interpretation, "summary judgment is appropriate unless relevant terms of the contract are ambiguous and the parties introduce conflicting evidence to clarify the ambiguity." *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 605 (Wash. Ct. App. 2017). If the language of an insurance contract is clear and unambiguous, the court "must enforce the contract as written[.]" *Feenix Parkside LLC v. Berkley N. Pac.*, 8 Wash. App. 2d 381, 386 (Wash. Ct. App. 2019). A clause or phrase within an insurance contract is ambiguous "when, on its face, it is susceptible to two reasonable interpretations." *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 18 Wash. App. 2d 600, 611 (Wash. Ct. App. 2021), *review granted*, 198 Wash. 2d 1032 (2022).

If the language of an insurance contract is, in fact, ambiguous, "the contract will be construed in favor of the insured." *Feenix Parkside LLC*, 8 Wash. App. 2d at 386. This rule of

1   construction is applied "strictly and narrowly" to exclusionary clauses that limit policy coverage.

2   *Id.* at 394. "[I]f a policy exclusion drafted by the insurance company is ambiguous, the exclusion

3   is rendered ineffective." *City of Oak Harbor v. St. Paul Mercury Ins. Co.*, 139 Wash. App. 68, 72

4   (Wash. Ct. App. 2007).

5       Both parties acknowledge that the coverage of the insurance policy in question revolves

6   around the term "operated." (*See* Pl.'s Mot. at 11; Def.'s Mot. at 6.) Washington courts have

7   previously looked to the ordinary meaning of the term, finding that operation requires an

8   individual to have "actual physical control." *In re Arambul*, 37 Wash. App. 805, 807 (Wash. Ct.

9   App. 1984); *see N. Pac. Ins. Co. v. Christensen*, 143 Wash. 2d 43, 50 (2001) (stating that an

10   "'operator' should be defined as 'a person who is in actual physical control of a vehicle.'"); *see*

11   *also Oregon Mut. Ins. Co. v. Fonzo*, 2 Wash. App. 304, 309 (Wash. Ct. App. 1970) (defining that

12   operation "involves personal physical management of the automobile at the time of the

13   accident.").

14       Plaintiff argues that Ms. Bergstrom did not have actual physical control over the Jeep

15   because the vehicle was not running and had been placed in "tow mode," relegating the vehicle's

16   transmission to neutral. (Pl.'s Mot. at 13; *see* Am. Compl. at ¶ 5.8.) Plaintiff argues that, because

17   the engine was not running, the Jeep's power steering was not engaged and therefore Ms.

18   Bergstrom could not physically turn the wheel. (Pl.'s Mot. at 13.) Plaintiff further argues that, at

19   the time of loss, Ms. Bergstrom had moved her hands to her lap and was no longer attempting to

20   control the Jeep. (*Id.*)

21       Defendant counters that Ms. Bergstrom was in personal physical management of the Jeep

22   as she was placed in the Jeep for the specific reason of keeping the wheels straight. (Def.'s Mot.

23   at 7.) Defendant argues that Ms. Bergstrom could only try keep the Jeep straight by "performing

REPORT AND RECOMMENDATION - 6

a function or exerting power or influence over the Jeep[.]" (*Id.* at 8 (internal quotation marks omitted).) Defendant argues that manipulating the steering wheel would control the direction of the Jeep as it moved, as all the tires of the Jeep were on the ground, "regardless of whether the engine was on or the transmission was in gear." (Def.'s Resp. at 8.) Defendant further argues that there is no evidence that Ms. Bergstrom tried and failed to keep the Jeep straight. (*Id.*)

     Here, the Court finds that questions of fact remain regarding Ms. Bergstrom's ability to assert actual physical control over the Jeep that preclude summary judgment for either party. Based on the elaborations provided by Plaintiff within his motion for partial summary judgment and supporting declaration, there is a question of fact regarding Ms. Bergstrom's role in in the incident and whether Ms. Bergstrom had or was attempting to exert actual physical control over the Jeep at the time of the incident if her hands were in her lap. (*See* Pl.'s Mot. at 4; Bergstrom Decl. at ¶ 10.) Additionally, the record indicates that the Jeep's engine was not running, and the vehicle's transmission was in neutral. (*See* Am. Compl. at ¶ 5.8; *see also* Robson Decl., Ex. C at 14; Moore Decl. (dkt. # 22), Ex. 2 at 108 ("Progressive was informed . . . that the Jeep was not running."); Moore Decl., Ex. 4 at PROG_00202.) Based on these facts, Plaintiff contends the power steering of the Jeep was not engaged. (*See* Pl.'s Mot. at 13; Bergstrom Decl. at ¶ 9.) Plaintiff also states that the Jeep's braking system was connected to the motor home, giving Mr. Bergstrom control over the Jeep's ability to brake. (Pl.'s Mot. at 5; *see* Moore Decl., Ex. 4 at PROG_00202.) However, there remains a genuine dispute as to whether these facts prevented Ms. Bergstrom from exerting personal or physical control over the steering wheel or Jeep while she was in the vehicle. Summary judgment is therefore not proper for either party.

REPORT AND RECOMMENDATION - 7

### 2. Bad Faith and the Consumer Protection Act

In Washington, RCW 48.01.030 requires that insurance providers deal in good faith with policyholders. *Indus. Indem. Co. of the Nw. v. Kallevig*, 114 Wash. 2d 907, 916 (1990).

> [A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. Whether an insurer acted in bad faith is a question of fact. Accordingly, an insurer is entitled to a directed verdict or a dismissal on summary judgment of a policyholder's bad faith claim only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party.

*Leahy v. State Farm Mut. Auto. Ins. Co.*, 3 Wash. App. 2d 613, 631 (2018) (quoting *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 484 (2003) (internal citations omitted)).

The Consumer Protection Act ("CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. RCW 19.86.020. Washington courts have derived a 5-part test for actions brought under the CPA. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784 (1986). Under this test, plaintiffs must demonstrate (1) an unfair or deceptive practice or act; (2) in commerce or trade; (3) that affects the public interest; (4) causing injury to the plaintiff's business or property; and (5) a causal link between the unfair or deceptive practice or act and the injury suffered. *Id.* at 784-85.

Under RCW 48.30.010, insurance providers are prohibited from "engag[ing] in unfair methods of competition or in unfair or deceptive acts or practices." Pursuant to the authority granted by this and RCW 48.02.060, the Washington Insurance Commissioner regulates unfair insurance trade practices. *Kallevig*, 114 Wash. 2d at 922; *see* WAC 284-30-300 *et seq.* WAC 284-30-330 enumerates the "types of conduct which constitute unfair or deceptive acts or

practices in the business of insurance, specifically applicable to the settlement of claims." *Kallevig*, 114 Wash. 2d at 922 (internal quotations omitted). Violations of WAC 284-30-330 therefore constitute unfair trade violations of RCW 48.30.010 and may constitute violations of the CPA if the 5-part test is met. *Id.* at 923.

Plaintiff argues that Defendant's denial of coverage constitutes bad faith as a matter of law. (Pl.'s Mot. at 15.) Specifically, Plaintiff argues that Defendant made errors in its investigation of the claim and then recommended denial of coverage based on incorrect assumptions and misunderstandings about the incident. (*Id.*) Plaintiff also argues that Defendant's mishandling of the claim violated multiple provisions of WAC 284-30-300 *et seq.*[3] (*Id.* at 16-17.) Plaintiff further argues that Defendant's denial of coverage is a violation of the CPA. (*Id.* at 17.)

Defendant's position is that the record does not support Plaintiff's contentions that it failed to properly investigate the incident. (Def.'s Resp. at 9.) Defendant further argues that it did not act in bad faith or violate the CPA in denying coverage to Plaintiff and that its investigation was not an unfair or deceptive practice because it relied on information provided by Plaintiff regarding the incident. (*Id.* at 10, 12.) Here, the Court finds that questions of fact preclude summary judgment. As discussed above, factual questions regarding Ms. Bergstrom's operation of the vehicle remain. Unanswered, the Court cannot determine as a matter of law whether Defendant based its investigation upon "a faulty factual premise." (Pl.'s Mot. at 15.)

---

[3] Specifically, Plaintiff argues Defendant violated WAC 284-30-330(4) ("[r]efusing to pay claims without conducting a reasonable investigation"), WAC 284-30-330(13) ("[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement"), and WAC 284-30-360(3) ("[f]or all other pertinent communications from a claimant reasonably suggesting that a response is expected, an appropriate reply must be provided within ten working days for individual insurance policies, or fifteen working days with respect to communications arising under group insurance contracts").

REPORT AND RECOMMENDATION - 9

Additionally, the record clearly demonstrates that Defendant did in fact investigate the incident, even though there is a genuine dispute over whether Defendant's investigation was reasonable. (*See* Robson Decl., Exs. C-D; Moore Decl., Exs. 2, 4.) Summary judgment is therefore improper for Plaintiff's claims regarding bad faith and unfair practices.

Furthermore, Plaintiff's argument that Defendant is liable as a matter of law under the CPA is premature. Plaintiff argues that, because he can prove Defendant's breach of the duty of good faith or violation of WAC 284-30-330 *et seq.*, the Court should rule that the first three elements of the 5-part test have been met, reserving the final two elements regarding damages for trial. (Pl.'s Mot. at 18.) Plaintiff asks the Court to assume that damages and causation can be proven, despite lingering questions of fact surrounding Defendant's coverage decision. Without a determination regarding Defendant's denial of coverage, Plaintiff cannot show more than nominal damages, and "only injuries to business or property are recoverable in a Consumer Protection Act claim." *Anderson v. State Farm Mut. Ins. Co.*, 101 Wash. App. 323, 330 (Wash. Ct. App 2000); *see Kallevig*, 114 Wash. 2d at 920. Accordingly, Plaintiff is not entitled to summary judgment for his CPA claim at this time.

**B. Motion to Strike**

Plaintiff moves to strike a portion of Defendant's motion for partial summary judgment in which Defendant references and discusses settlement negotiations between the parties. (Pl.'s Resp. at 10; *see* Def.'s Mot. at 2.) Plaintiff also moves to strike an exhibit from Michael Robson's declaration, which was submitted as evidence in support of Defendant's motion for partial summary judgment, which details communication from settlement negotiations. (Pl.'s Resp. at 10; *see* Robson Decl., Ex. B.) Under Fed. R. Evid. 408(a), evidence of settlement negotiations is not admissible when offered "either to prove or disprove the validity or amount of

REPORT AND RECOMMENDATION - 10

a disputed claim[.]" While such evidence may be admitted for another purpose (Fed. R. Evid. 408(b)), here, Defendant fails to offer a valid reason. The Court is unconvinced by Defendant's argument that settlement discussions after Plaintiff filed suit are relevant to provide a complete narrative of Defendant's claim handling. (*See* Def.'s Reply at 2.) Defendant's references to and discussion of settlement negotiations are woven between statements that Defendant "maintain[ed] that its coverage position was correct" and that "the insurance claim at issue has ultimately been resolved." (*Id.*) The Court thus cannot find that the references to settlement negotiations are offered for any purpose other than to disprove the validity of the claim before the Court. Plaintiff's motion to strike is therefore granted.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's motion for partial summary judgment (dkt. # 20) be DENIED, and that Defendant's motion for partial summary judgment (dkt. # 18) be DENIED. Furthermore, the Plaintiff's motion to strike (dkt. # 24) is GRANTED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 15, 2022.**

//

Dated this 1st day of April, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12